## JUDITH FITZGERALD v. GEORGE FITZGERALD
### (5759)

BIELUCH, O'CONNELL and STOUGHTON, Js.

Argued March 15—decision released October 4, 1988

*Elaine S. Amendola,* with whom, on the brief, was *Edward R. Scofield,* for the appellant-appellee (defendant).

*J. Patrick Dwyer,* with whom, on the brief, was *Timothy J. Fitzgerald,* for the appellee-appellant (plaintiff).

O'CONNELL, J. The defendant appeals from a judgment of the trial court finding the plaintiff in contempt as a result of her violation of certain terms of the parties' dissolution decree. The defendant claims that the trial court erred (1) in finding that a promissory note was not due and payable as a result of the plaintiff's rental of the marital home, despite the fact that such rental violated the terms of the dissolution decree, and (2) in denying the defendant's motion for modification of alimony in light of the plaintiff's receipt of substantial income from the rental of the marital home. The plaintiff cross appeals alleging that the trial court erred (1) in finding that her rental of the marital home violated the dissolution decree, and (2) in finding her in contempt. We find no error on the appeal and error on the cross appeal.

The following facts are relevant to the resolution of this appeal. The marriage of the parties was dissolved on August 14, 1985. Pursuant to the decree of the trial court, the defendant transferred to the plaintiff his interest in the parties' Glastonbury home, in return for the plaintiff's execution of a noninterest bearing promissory note in the amount of $50,100. The decree

required that this note be secured by a mortgage on the property, and that it be payable upon the occurrence of any of four contingencies: the plaintiff's remarriage, death, failure to use the property as the principal place of residence for herself and the parties' minor child, or the date August 14, 1991.

On November 11, 1986, the defendant sought to have the plaintiff adjudged in contempt for, among other reasons, failing to use the Glastonbury property as the plaintiff's primary residence.[1] The defendant also filed a motion to modify the dissolution decree by reducing the $250 weekly alimony he paid to the plaintiff, as the defendant claimed that the plaintiff's rental of the Glastonbury property constituted an unforeseen substantial change in circumstances.

The trial court denied that portion of the motion which sought to reduce the plaintiff's alimony. The court also held that the plaintiff's rental of the home violated the terms of the dissolution decree, and found her in contempt. The trial court refused, however, to order the plaintiff to pay the defendant the $50,100 due on the promissory note, because it found that the plaintiff believed that the rental was "allowable." The court, instead, required the plaintiff to pay the defendant the sum of $5093, which equalled one-half of the income received for the six months rental of the marital home, adjusted for expenses due and owing between the parties.[2] The plaintiff was ordered to pay the $5093 by January 1, 1987, to purge the contempt, and was fur-

---

[1] The defendant's motion was also based upon the plaintiff's failure to execute and deliver the promissory note to the defendant. The plaintiff, however, executed and delivered the note to the defendant on December 17, 1986, the second day of the hearing on the defendant's motions, thereby purging herself of the contempt finding.

[2] The trial court awarded the defendant $4800 as the value of one-half of the interest income, and added to that figure $2000 in counsel fees, $263 in sheriff's and filing fees, and $300 for the value of a painting owned by the defendant, which the plaintiff had sold in violation of the dissolution

ther ordered to reinhabit the Glastonbury home by April 15, 1987.[3] Failure to do so, or any future rental of the home by the plaintiff, would have resulted in the acceleration of the $50,100 debt owed to the defendant. The present appeal and cross appeal followed.

The defendant first claims that the trial court erred in failing to order the plaintiff's promissory note due and payable upon finding the plaintiff in contempt for vacating the marital home in violation of the divorce decree. The defendant argues, in essence, that the contempt finding operated as a fifth contingency under the terms of the dissolution decree, the occurrence of which required the plaintiff's payment of the promissory note.

It is a well established doctrine that, in deciding disputes on the family law docket, trial courts have broad discretion to fashion equitable relief. *Oneglia* v. *Oneglia,* 14 Conn. App. 267, 271–72, 540 A.2d 713 (1988), and cases cited therein. In the present case, the trial court found the plaintiff in contempt for her actions in leaving the marital home, and in renting it to third parties. To find a party in contempt, a trial court must conclude that a party has disobeyed an order of the court. " 'Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. *Welsh* v. *Barber* . . . [52 Conn. 147, 157 (1884)]; 2 Swift, Digest, p. 358. . . . A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him.' " *Stoner* v.

decree. The trial court then subtracted $2250 from that amount for past real estate taxes that the defendant admittedly owed the plaintiff. The amount the trial court ordered the plaintiff to pay to the defendant was apparently $20 less than that actually owed. We assume this discrepancy resulted from an arithmetical error. The parties have not raised this discrepancy on appeal.

[3] The plaintiff was further ordered to pay to the defendant one-half of rent monies obtained from the time of judgment on the motions to the time the tenants vacated the premises.

*Stoner,* 163 Conn. 345, 359, 307 A.2d 146 (1972), quoting *State* v. *Jackson,* 147 Conn. 167, 168–69, 158 A.2d 166 (1960).

In the present case, the trial court erred in finding the plaintiff in contempt, as the plaintiff's actions did not violate an order of the court. The trial court, in rendering the dissolution decree, never affirmatively *ordered* the plaintiff to remain in the marital home. Rather, the decree merely provided that the failure to remain in occupancy constituted a contingency which would, in turn, cause the promissory note referenced in the decree to become due and payable. The dissolution decree simply placed the plaintiff on notice that any of several actions, if taken, would trigger the payment on the note to the defendant. Given the nature of the order, the plaintiff's actions could not constitute a "disobedience" thereof, and the trial court erroneously found the plaintiff in contempt.

We further conclude, however, that the trial court's actions in denying the relief requested did not fall beyond the scope of the trial court's remedial discretion in the determination of family law matters. "In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the trial court. *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981). For that reason, equitable remedies are not bound by formula but are molded to the needs of justice. *Hebrew University Assn.* v. *Nye,* 26 Conn. Sup. 342, 348–49, 223 A.2d 397 (1966). ' "The scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the trial court correctly applied the law and could reasonably have concluded as it did. *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985); *Rose* v. *Rose,* 10 Conn. App. 391, 393, 523 A.2d 914 (1987)." *Voloshin* v. *Voloshin,* 12 Conn. App. 626, 629, 533 A.2d 573 (1987).' " *Oneglia* v. *Oneglia,*

supra, 271–72, quoting *Crocker* v. *Crocker,* 13 Conn. App. 129, 132, 534 A.2d 1251 (1987).

With regard to the trial court's actions in ordering the remedial measures outlined herein, we find that this standard has been met. The trial court's action in ordering that the plaintiff provide the defendant one-half of the rents collected, emphasizing that the note would become due and payable upon future rental of the marital home, and barring her from ever again renting the home to another party, was well within that court's general remedial discretion. The remedial nature of the trial court's actions is readily apparent. The trial court expressly referred to the amount of money owed by the plaintiff to the defendant as the "purge figure," and clearly sought to remedy the inequity which resulted from the plaintiff's action. Although we conclude that the trial court erred in finding the plaintiff in contempt, its orders thereafter were well within its discretion. See *Sardilli* v. *Sardilli,* 16 Conn. App. 114–15, 120, 546 A.2d 926 (1988).

The defendant next claims that the trial court erred in denying his motion for modification of alimony, in light of the income received by the plaintiff from the rental of the property. "Connecticut unequivocally follows the widely established rule that no modification of alimony or support is to be granted unless there has been a showing of a substantial change in the circumstances of either party. General Statutes [§ 46b-86]; *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 [1976]; see Clark, Domestic Relations § 14.9." *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976). Case law in the area of modification makes it abundantly clear that two elements must be present in order for the modification to be proper: (1) that the moving party bear the burden of proving a clear showing of a change in circumstances; *Howat* v. *Howat,* 1 Conn. App. 400, 402, 472 A.2d 799 (1984); *Vonaa* v. *Vonaa,*

15 Conn. App. 745, 747–48, 546 A.2d 923 (1988); and (2) that any change shown be substantial. *McGuinness* v. *McGuinness,* 185 Conn. 7, 11, 440 A.2d 804 (1981); *Vonaa* v. *Vonaa,* supra, 748.

The defendant claims that the motion to modify should have been granted (1) because the income obtained by the plaintiff incident to the rental of the marital home constituted a substantial and unforeseen change in circumstances, and (2) because the parties' net worth changed dramatically since their dissolution. Once again, we disagree.

With regard to the defendant's first rationale, the trial court, in fashioning the contempt order, ordered the plaintiff to pay to the defendant one-half of the rental income, thereby eliminating any adverse change in the parties' postdissolution economic standing. Thus, any disparity arising from the rental income was rectified.

We will not review the defendant's second rationale, namely, that there resulted a change in the parties' economic standing based upon the appreciation of the value of the marital home subsequent to the dissolution, as this matter was neither raised in the parties' statement of issues; see Practice Book §§ 4013, 4065; nor supported by citations to precedent or other authorities. " 'Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court.' " *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 250 n.3, 524 A.2d 610 (1987), quoting *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984).

There is no error on the appeal, there is error in part on the cross appeal, the judgment finding the plaintiff in contempt is set aside and the case is remanded with

direction to deny the defendant's motion to adjudge the plaintiff in contempt.

In this opinion the other judges concurred.